# IN THE COURT OF APPEALS OF IOWA

No. 23-0143
Filed October 30, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LEON DEAN BEARSHIELD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, James N. Daane, Judge.

        The defendant challenges his conviction, arguing he was denied the right to testify. **AFFIRMED.**

        Francis Hurley, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

A jury found Leon Bearshield guilty of child endangerment causing bodily injury. Having first decided not to testify, Bearshield changed his mind after he rested his case, but the district court refused to reopen the record and denied Bearshield's request to testify. On appeal, Bearshield maintains he was denied his constitutional right to testify; he asks us to reverse his conviction and remand for new trial. The State characterizes the issue differently, noting Bearshield had the opportunity to present a defense—including his own testimony—during his case-in-chief and chose not to do so Thus, the State maintains the appropriate question on appeal is whether the district court abused its discretion in denying Bearshield's motion to reopen the record—not whether the court prevented Bearshield from exercising his constitutional right to testify. Following our review, we conclude the district court did not abuse its discretion; we affirm.

**I. Background Facts and Proceedings.**

The State charged Bearshield with one count of child endangerment resulting in bodily injury and alleged the habitual-offender enhancement applied. Bearshield pled not guilty and elected to be tried by a jury.

The State presented seven witnesses over the first two days of trial before resting its case. Bearshield then asked to "make some record," and the jury left the courtroom before Bearshield moved for judgment of acquittal, which the district court denied. Once the jury was brought back into the courtroom, the court asked, "Does the defense have any evidence they wish to present?" Bearshield rested. At that point, the jury was excused for the remainder of the day; the court and parties stayed and prepared jury instructions. After they discussed a disputed

instruction and the court made a ruling, Bearshield interjected. The court advised the parties to "meet just a couple minutes before 9[:00 a.m.]" in case there were additional concerns about the jury instructions and stated, "And counsel can have a chance to talk to Mr. Bearshield about whatever it is he's wanting to tell the court, okay?" Then the court adjourned for the day.

Outside the presence of the jury, the court started the third day of trial by relaying, "While we were off the record, Mr. Bearshield asked the court for the opportunity to request that he be permitted to testify." The court asked Bearshield to come forward and explain his request. Bearshield stated he "would like to be able to take the stand and pretty much give the truth of the facts of this case." The district court allowed Bearshield an opportunity to describe what evidence he would present. After offering his version of the underlying events,[1] Bearshield confirmed he knew the jury would be informed he was a twice-convicted felon if he

---

[1] Bearshield alleged defense counsel and the county attorney altered the contrast of a photo showing a facial injury to the child victim, which was used against Bearshield at trial. The court asked Bearshield what evidence he had to support his allegation, and he responded that defense counsel had the photograph in his possession when counsel visited him at jail before trial. The court explained it would expect counsel to have a copy of the State's evidence and that counsel's possession of the photo was not evidence that defense counsel altered the photograph. When asked by the court, the State confirmed that there were not any additional photographs taken of the child that were not offered as evidence, and the court noted that the crime scene investigator who took the photo testified what was offered as an exhibit was the same photograph she took. Defense counsel stated that the photographs admitted were the same ones he showed Bearshield and denied that the photos were altered in any way. The court orally ruled that it found Bearshield's accusation not credible, noting there was no incentive for defense counsel to alter the photograph and that counsel's representation of Bearshield during trial was "exemplary" and he "advocated for the defendant as fiercely and fairly as he could under our rules." Still, the court informed Bearshield that "there's a procedure for you to claim that your attorney was somehow ineffective, and you'll have the right to make that case if a conviction is entered here."

testified. The State resisted, arguing, "the evidence is closed" and "[w]e need to move forward with closing arguments and the evidence that has been presented to the jury." The court denied Bearshield's request to reopen the record so he could testify, ruling, "[F]or the reasons that the county attorney stated, that the record is already closed, the jurors are ready to hear the case and take it into the jury room."

The jury found Bearshield guilty as charged, and he was later sentenced to a term of incarceration not to exceed fifteen years. Bearshield appeals.

## II. Discussion.

To begin, we agree with the State that the issue properly before us is whether the district court abused its discretion in denying Bearshield's motion to reopen the record. *See State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992) (providing that a ruling denying a motion to reopen the record is reviewed for an abuse of discretion). The court did not prevent Bearshield from exercising his constitutional right to testify—he was given the opportunity as part of the normal course of the proceedings and waived it. *See State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (recognizing defendants can waive their constitutional right to testify and "the trial court has no duty to determine on the record that the defendant has made a voluntary, knowing, and intelligent waiver of the right to testify at trial").[2]

---

[2] We recognize "[t]he decision whether or not to testify belongs to the defendant"— not defense counsel. *Ledezma v. State*, 626 N.W.2d 134, 146 (Iowa 2001). But insofar as Bearshield implies he was prevented from testifying by counsel or that counsel waived his right for him without his consent, that issue is better raised as a claim of ineffective assistance, which can only be raised in a postconviction-relief proceeding. *See* Iowa Code § 814.7 (2022).

"It is well settled that a district court is given broad discretion to allow a party to reopen the record and introduce evidence that was previously omitted." *State v. Long*, 814 N.W.2d 572, 577 (Iowa 2012). The discretion "must necessarily be especially broad" because "[j]udicial administration of the trial calendar is implicated." *Teeters*, 487 N.W.2d at 349.

In reviewing the district court's exercise of discretion, we weigh several factors "in determining whether a case should [have been] reopened for additional evidence:"

> (1) the reason for the failure to introduce the evidence; (2) the surprise or unfair prejudice inuring to the opponent that might be caused by introducing the evidence; (3) the diligence used by the proponent to secure the evidence in a timely fashion; (4) the admissibility and materiality of the evidence; (5) the stage of the trial when the motion is made; (6) the time and effort expended upon the trial; and (7) the inconvenience reopening the case would cause to the proceeding.

*Id.* at 348. As in *Teeters*, where our supreme court affirmed the district court's decision not to reopen the record at the defendant's request, "[j]ury instructions, though not yet read, had been prepared and presented to counsel. Instructions are and must be shaped to the evidence in the case, and both parties had stated the evidence was complete before the instructions were presented." *Id.* at 349. The record does not reflect why Bearshield failed to testify before resting his case, but as the district court noted, Bearshield's criminal record was a consideration. And to the extent Bearshield wanted to testify to complain about an allegedly altered photograph, it is not clear why Bearshield could not have raised the issue to the court when the exhibit was initially introduced and admitted. But, just as the jury was to receive its instructions, Bearshield asserted that if he could obtain the

jail video of his meeting with trial counsel it would confirm his version related to the photograph, which would have further delayed the trial. And because the district court had details about what Bearshield wanted to address, it could weigh the *Teeters* factors. Although Bearshield's testimony of his version of the underlying incident would have been admissible and material, the allegations against defense counsel raised by Bearshield were less likely to be admitted as relevant proof in the case. Thus, the district court's ruling not to reopen the record is not untenable or unreasonable on this record. Even with this factor in favor of reopening the record, "we find the exercise of discretion here fell short of 'clearly unreasonable.'" *Id.; accord id.* (affirming decision not to reopen record even though "[a]t least some of these factors militate in favor of reopening"). So, we affirm.

**AFFIRMED.**